Bertha PRUELLAGE, Administratrix of the Estate of John Pruellage, Deceased, Plaintiff, Respondent,

v.

The DE SEATON CORPORATION, a Corporation, Thirty-Five Seventeen Company, Inc., a Corporation, Ramos, Inc., a Corporation, George Ogilvy, Michael Ogilvy, and A. C. Vyver, Defendants,

George Ogilvy, Appellant.

No. 32044.

St. Louis Court of Appeals.

Missouri.

July 19, 1966.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 13, 1966.

Application to Transfer Denied Nov. 14, 1966.

**38**

Schwartz, Schwartz & Gilden, St. Louis, for appellant.

Thompson, Mitchell, Douglas & Neill, Joseph P. Logan, H. Meade Summers, Jr., Fred E. Arnold, St. Louis, for plaintiff-respondent.

RUDDY, Judge.

This proceeding, which comes to the writer on reassignment, is a motion for a writ of scire facias to renew a judgment and revive a lien, pursuant to the provisions of Sec. 511.370 RSMo 1959, 32 V.A.M.S. Defendant, George Ogilvy, appealed from the order of the trial court reviving the judgment and lien.

The sole issue submitted by defendant is whether an adjudication and discharge in a bankruptcy proceeding, where the judgment was properly scheduled, bars the revival of the judgment and lien thereafter against the judgment debtor.

On August 12, 1952, a judgment was entered in favor of Bertha Pruellage, Administratrix of the Estate of John Pruellage, Deceased, against George Ogilvy, defendant (appellant) herein and certain other defendants on count I of plaintiff's petition and against the certain other defendants on counts II and III. The only judgment against George Ogilvy, who shall be referred to hereafter as defendant, was under count I and was for the sum of $6676.52. On August 10, 1962, plaintiff filed her "motion for scire facias to revive judgment * * *," wherein she alleged that on July 23, 1962, she had executed an assignment to Bertha P. Deu Friend and John K. Pruellage of the judgment obtained on August 12, 1952, in order to make final distribution of the estate in which she was administratrix and that this was done pursuant to an order of the Probate Court. In the motion plaintiff and the assignees prayed that the judgment of August 12, 1952, and the lien pursuant to said judgment against all of the defendants, be revived and asked that a writ of scire facias be issued to the defendants. On the aforesaid date the writ was ordered to issue for all defendants. Thereafter, George Ogilvy filed an answer to the writ of scire facias, wherein he alleged (1) that he was not indebted to the judgment creditor or the purported assignees; (2) that said obligation has been paid; and (3) "That on or about the 30th day of March, 1960, he filed a petition in bankruptcy and was adjudicated a bankrupt and that on or about the 1st day of June, 1960, he received a discharge in bankruptcy from the United States District Court for the Eastern District of Missouri."

The aforesaid assignees and plaintiff filed a reply to the answer of defendant, wherein they denied the allegations of paragraphs (1) and (2) of defendant's answer and said they were without information sufficient to form a belief as to the allegations of paragraph (3), further alleging, " * * * that the allegations of said Paragraph 3 do not constitute a defense to the revival of a judgment by writ of Scire Facies."

A hearing was had on the motion to revive the judgment and the lien and the

trial court ordered the judgment and lien revived against all defendants and further ordered " * * * plaintiff to have execution on this judgment." At the hearing on the motion to revive defendant placed in evidence a certified copy of his discharge in bankruptcy and it was stipulated by counsel for plaintiff and defendant that defendant in fact was discharged in bankruptcy and that the judgment claim against him was listed in the schedule of debts in that proceeding. At the hearing defendant, through his counsel, cited Section 17 of the Federal Bankruptcy Act as authority for his contention that the judgment may not be revived against him because of having been discharged in bankruptcy.

■ The judgment rendered on August 12, 1952, became a lien on that date on the real estate of all the defendants against whom the judgment was rendered, situated in the county " * * * for which or in which the court is (was) held," Section 511.350 RSMo 1959, 32 V.A.M.S. The lien of this judgment extended to such real estate referred to and commenced on the day of the rendition of the judgment and continued for a period of three years (Section 511.360 RSMo 1959, 32 V.A.M.S.), subject to be revived in the manner provided by Section 511.370, supra, and if a scire facias be issued pursuant to the last named section of the statute after the expiration of the three year lien, and a judgment of revival is afterwards rendered, such revival shall only take effect from the rendition thereof, and shall not prevail over intermediate encumbrances. Section 511.-380, RSMo 1959, 32 V.A.M.S.

It will be observed that the statutory lien created by the judgment rendered August 12, 1952, expired three years thereafter, namely, on August 12, 1955, and was not an effective lien on any of the real estate of the defendant at the time he filed his petition in bankruptcy and was adjudicated a bankrupt in 1960. However, as provided in Section 511.370, supra, plaintiff or his legal representative at any time within ten years, had the statutory right to sue out a scire facias to revive the judgment and lien. Had no adjudication and discharge in bankruptcy intervened, plaintiff's motion for scire facias to revive the judgment and lien having been timely filed, there could be no doubt about plaintiff's right to revive the judgment and lien against defendant.

Title 11, Section 35 U.S.C.A. (Section 17 of the Bankruptcy Act) provides that a discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, with certain exceptions which are specified therein. The judgment herein sought to be revived does not come within any of these exceptions.

In the case of Crandall v. Durham, 348 Mo. 240, 152 S.W.2d 1044, l. c. 1045, the court said:

"Defendant's discharge in bankruptcy released him from the obligation of plaintiff's debt, not in the sense that the debt was paid or extinguished but in that it afforded him a complete legal defense to plaintiff's action if he availed himself of it, unless he thereafter waived said release by, for instance, promising to pay the debt, the debt, not being extinguished or cancelled, having sufficient life to furnish the consideration for the new promise * * * (Citing cases)."

■■ A discharge of a debtor in bankruptcy does not satisfy the debt but merely releases the debtor of his legal obligation to pay, though the moral obligation to pay remains and furnishes a sufficient consideration in law for a new promise to pay, Donnell v. England, 345 Mo. 726, 137 S.W.2d 471. The discharge in bankruptcy may be pleaded as a defense, however, it is a defense only as to the personal liability of the bankrupt in connection with the payment of the debt, Chitwood v. Jones, Mo.App., 56 S.W.2d 147. If a valid lien exists it presents a different situation and where the judgment remains unpaid the

adjudication in bankruptcy is no bar to the continuation of the lien.

The United States Supreme Court in the case of Metcalf v. Barker, 187 U.S. 165, l. c. 174, 23 S.Ct. 67, l. c. 71, 47 L.Ed. 122, said, " * * * where the lien is obtained more than four months prior to the filing of the petition, it is not only not to be deemed to be null and void on adjudication, but its validity is recognized. When it is obtained within four months the property is discharged therefrom, but not otherwise * * *."

■ Many of the courts of other jurisdictions have announced the same conclusion. In the recent case of Davis v. Polk Financial Service, 242 Miss. 419, 135 So.2d 175, 178, the court said:

"The design of the Congress in the Bankruptcy Act was to protect all liens, * * * Hence a trustee in bankruptcy takes subject to judgment, execution, and attachment liens which are valid under state law and not invalidated or subordinated by the Bankruptcy Act. The holder of a valid lien on property of one adjudicated in bankruptcy may assert it against the property to the same extent as if the bankruptcy had not intervened, provided the attachment or suit was begun more than four months prior to the filing of the petition. * * *"

The same conclusion was reached in the following case, Tuten v. Zetterower, 218 Ga. 230, 126 S.E.2d 752, 754.

Faced with the identical issue we have in the instant case the court in the case of Schexnailder v. Fontenot, 147 La. 467, 85 So. 207, held that a discharge in bankruptcy does not destroy a mortgage lien upon the bankrupt's real property subject to exemption, but merely his personal liability. In that case the court said that, " * * * the judgment creditor could have immediately subjected the property to the payment of his debt, and this is true, no matter how long he might have been required to wait, provided the judicial mortgage and lien

were kept alive in the manner pointed out by law. * * *" (85 So. l. c. 209).

Supporting the aforesaid authorities is the case of Marx v. Hart, 166 Mo. 503, 66 S.W. 260. In that case creditors had sued out a writ of attachment against the debtor and notice of garnishment had been served on two garnishees who were found to have property of the debtor in their possession. A general judgment was entered against the garnishees and under the statute became a lien upon the real estate of the garnishees. The court pointed out that the goods of defendant had been attached long prior to the adjudication and discharge in bankruptcy. The court then said, 66 S.W. l. c. 265, " * * * In our opinion, the subsequent proceedings in bankruptcy did not divest the jurisdiction of the circuit court to enforce the rights which had accrued to plaintiff by these garnishment proceedings. * * *" In that case the court also said, " * * * 'It is abundantly established by the courts of last resort in this country, Federal and State, that when the jurisdiction of a State court to enforce mechanics' liens has attached, that jurisdiction will not be divested by proceedings in bankruptcy instituted subsequently thereto.' * * *"

Defendant has cited no authorities from Missouri or elsewhere, except a few which we will discuss later, to the effect that a discharge in bankruptcy constitutes a defense to the revival of a judgment and lien. As we have pointed out the discharge in bankruptcy merely releases the debtor from personal liability for the debt and bars further pursuit of the debtor personally or of his future property. Schexnailder v. Fontenot, supra. The lien acquired on the rendition of a judgment remains and is preserved and it logically follows that the foundation for the lien, namely, the judgment, remains and is preserved. To hold otherwise would be a non sequitur.

■ Having shown that judgment and lien remain and are not barred by the discharge in bankruptcy it becomes clear

that they may be revived if a timely writ of scire facias is obtained. (Section 511.-370, supra). However, when the revivor proceedings follow a discharge in bankruptcy the judgment entered should be a qualified revival and not a general judgment of revival without reservations and limitations. Obviously, the judgment should not permit a general execution to issue against the debtor for the collection of plaintiff's judgment. To permit collection of plaintiff's judgment out of real estate and personal property acquired after defendant's discharge in bankruptcy would be repugnant to the purpose of the Bankruptcy Act and would render the discharge in bankruptcy meaningless.

The judgment should be revived to the extent, and only to the extent, that it revives the lien as of the date of the judgment of revival on such real estate to which the lien attaches as provided in Section 511.350 RSMo 1959, 32 V.A.M.S. and which the defendant owned or had an interest in, whether held in his name or in another for him, at the time of filing his petition in bankruptcy and which should have been scheduled in the bankruptcy proceeding and was not so scheduled. For example, we have in mind such real estate as may have been inadvertently not scheduled or fraudulently conveyed prior to discharge in bankruptcy or held in another's name for the debtor's benefit. The lien should not attach to or affect real estate acquired after the discharge in bankruptcy. The judgment of revival should not permit a general execution. The only levy that should be permitted is that afforded by the qualified judgment and lien we have described.

The defendant asserts that plaintiff has never had a lien against anything since there was no property belonging to him which would be subject to the lien provided under the statute and seems to indicate that there should be an allegation of existing real estate subject to the lien. In the case of Stewart v. Gibson, 71 Mo.App. 232, a similar contention was asserted in

an action to revive the judgment and the court said at l. c. 234, " * * * In answer to this it is sufficient to say that Gibson may have made a fraudulent disposition of land which might make it important for the plaintiff to keep the lien of his judgment in force." As we have pointed out the effect of the lien is to impress upon the real estate of the judgment debtor not only a lien as to such real estate which was actually held by the debtor at the time of the bankruptcy proceedings and not scheduled but also any real estate that had been transferred by him in fraud of his creditors. This contention of defendant must fail.

■ Defendant points out that at the time of the filing of the petition in bankruptcy (March 30, 1960) there was no lien even though there was unscheduled real estate, since it is undisputed that any lien created by the judgment rendered August 12, 1952, expired in August, 1955. On first appearance there seems to be merit in this contention; however, on more mature reflection, it occurs to us that if real estate belonging to defendant as of the time of his bankruptcy proceeding was not scheduled and should have been, and is found and recovered in the future by plaintiff or her assignees, while ordinarily such real estate would be within the jurisdiction of the bankruptcy court, plaintiff or her assignees may be in a position to enforce their lien if the bankruptcy court did not pursue jurisdiction over the property or in its discretion surrender the jurisdiction over the property and consent to proceedings to enforce the revived lien. We should not attempt to foresee every circumstance or situation that may arise. All that we can and should do is to revive the judgment and lien to the limit and extent we have described. The parties will then be free in the future to invoke their respective rights, the plaintiff or her assignees under the judgment and limited lien and the defendant under his discharge in bankruptcy under whatever situation may hereafter arise. Henry v. Roque, La.App., 18

So.2d 917. Also see Citizens Savings Bank for Use of Govatos v. Astrin, 5 Terry 451, 44 Del. 451, 61 A.2d 419.

We now take up for brief discussion the cases relied on by defendant. The first case is that of Martinez v. Cogan, et al., 320 Ill.App. 468, 51 N.E.2d 595. This case involves revival of a judgment after a discharge in bankruptcy and the trial court ordered an unqualified revival of plaintiff's original judgment against the appellant and ordered general execution to issue. The appellate court in reversing the judgment and remanding the cause with directions, said, "It will be noticed that the judgment is an unqualified revival of plaintiff's original judgment against appellant, that it adjudges costs against him and orders a general execution to issue against him for the collection of plaintiff's judgment of 1933, * * *." (51 N.E.2d l. c. 596) While it is true that the court did say it was the established law that a discharge in bankruptcy is prima facie evidence of a release from all provable debts, it predicated its reversal and remand on the ground, as it said, " * * * the instant judgment is an unqualified revival of plaintiff's original judgment against appellant, and plaintiff's contention, if sustained, would deprive appellant of his right to set up his discharge in bankruptcy as a defense, *as to him*." (51 N.E.2d l. c. 597). We think the case is distinguishable from the instant case since the trial court's judgment of revival permitted general execution and was an unqualified revival which had the effect of making property, personal and real, acquired by the judgment debtor subsequent to his discharge in bankruptcy subject to the judgment and lien. The case of Tradesmens National Bank and Trust Company v. Cummings, 38 N.J.Super. 1, 118 A.2d 80, was a suit instituted by plaintiff on a judgment previously obtained. It appears that it was a suit to permit execution on its judgment. The defendant had been discharged in bankruptcy and had scheduled the plaintiff as a creditor and the

court held that this constituted an absolute defense. This case does not discuss or rule the issue of whether a discharge in bankruptcy bars the revival of the judgment and lien and therefore it fails to support the sole issue submitted by defendant.

The only Missouri case relied on by defendant is Haggerty v. Morrison, 59 Mo. 324, in which an appeal was taken from a judgment in the Circuit Court. Appellant filed his certificate of discharge of bankruptcy in the Supreme Court and likewise his plea showing that the judgment was allowed against his estate in the bankruptcy court and the plea being admitted, appellant's request for discharge from the judgment was sustained by the court. It appears that the judgment had never become final, and that no lien was asserted by the respondent or discussed by the court. We fail to find any support in this case for defendant's contention.

We have found no case, nor has any been cited by the parties, which involved a lien created by a judgment, which lien had expired at the time of the debtor's bankruptcy, but which could be revived in a scire facias proceeding brought timely. We think we have reached the proper conclusion, because otherwise, as plaintiff points out, in the event property is found that should have been scheduled, but was not scheduled, it would create an anomalous situation in which the judgment creditor would be in a worse position than the creditor who had never reduced his claim to judgment. This, because, Section 516.-350 RSMo 1959, 34 V.A.M.S., provides that every judgment shall be conclusively presumed to be paid after the expiration of ten years from the date of the original rendition thereof, unless revived as provided in Section 511.370, supra.

The cause is remanded with direction to enter a judgment of revival against defendant, George Ogilvy, in accordance with the views expressed herein and inasmuch as the other defendants in the scire facias

proceeding below have not appealed, the trial court's judgment as to them remains as rendered.

WOLFE, P. J., and ROY W. McGHEE, Special Judge, concur.